**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 19-50176 |
| | 19-50190 |
| *Plaintiff-Appellee/* | |
| *Cross-Appellant,* | D.C. No. |
| | 2:13-cr-00106- |
| v. | DOC-1 |
| | |
| MONGOL NATION, | |
| Unincorporated Association, | OPINION |
| | |
| *Defendant-Appellant/* | |
| *Cross-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted September 23, 2022
Pasadena, California

Filed January 6, 2023

Before: Sandra S. Ikuta, Danielle J. Forrest, and Holly A.
Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

## SUMMARY[*]

### Criminal Law

On Mongol Nation's appeal of its conviction and sentence for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and the Government's cross-appeal from the district court's order denying forfeiture of certain collective membership marks, the panel affirmed the district court's judgment.

Mongol Nation is an unincorporated association whose members include the official, or "full-patch," members of the Mongols Gang. A jury convicted the association of substantive RICO and RICO conspiracy violations; it also found various forms of Mongol Nation property forfeitable. That property included the collective membership marks—a type of intellectual property used to designate membership in an association or other organization. The district court denied forfeiture of those marks, holding that the forfeiture would violate the First and Eighth Amendments.

In Mongol Nation's appeal, it argued for the first time that it is not an indictable "person" under RICO because the indictment alleges that the association was organized for unlawful purposes only. The panel concluded that this unpreserved argument is non-jurisdictional. Reviewing for plain error, the panel did not resolve the Government's contention that Mongol waived it. The panel wrote that regardless of the merits of Mongol Nation's argument, it

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

mischaracterizes the allegations in the indictment. Because the indictment expressly contemplated that the association may exist for other purposes—perhaps including lawful ones—the indictment is not facially inconsistent with Mongol Nation's interpretation of the definition of "person" in the RICO statute, even if that interpretation is correct. As such, Mongol Nation cannot establish that the district court plainly erred by allowing it to be prosecuted under RICO.

On the Government's cross-appeal of the order denying its second preliminary order of forfeiture, the panel did not need to decide whether forfeiture of the membership marks would violate the First and Eighth Amendments, as the district court held. Nor did the panel reach the question whether the marks may be forfeitable without the transfer of any goodwill associated with the marks, or any other trademark issues. The panel held that the forfeiture was improper for a different reason—the Government effectively sought an order seizing and extinguishing the Mongols' right to exclusive use of its marks without the Government itself ever seizing title to the marks. Because RICO provides no mechanism for forfeiture without a transfer of title to the Government, the panel held that denial of the preliminary order of forfeiture was warranted on these grounds.

## COUNSEL

George L. Steele (argued), Law Office of George L. Steele, La Cañada, California; Stephen P. Stubbs, Las Vegas, Nevada; for Defendant-Appellant.

Bram M. Alden (argued), Assistant United States Attorney, Criminal Appeals Section Chief; Christopher Brunwin, Assistant United States Attorney; Tracy L. Wilkison, Acting

4                      UNITED STATES V. MONGOL NATION

United States Attorney; Office of the United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

John D. Loy, David E. Snyder, and Monica N. Price, First Amendment Coalition, San Rafael, California, for Amici Curiae First Amendment Coalition and California Attorneys for Criminal Justice.

**OPINION**

H.A. THOMAS, Circuit Judge:

This case concerns the Government's ability to prosecute an unincorporated association for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and to subsequently seek forfeiture of that association's intellectual property.

Defendant Mongol Nation is an unincorporated association whose members include the official, or "full-patch," members of the Mongols Gang. The Government has been prosecuting the Mongols Gang since at least 2008, leading to the convictions of more than 70 individual members under RICO and various other criminal statutes. Following those convictions, the Government indicted Mongol Nation (the unincorporated association) on charges of substantive RICO and RICO conspiracy violations. A jury convicted the association on both charges. It also found various forms of Mongol Nation property forfeitable. That property included certain collective membership marks—a type of intellectual property used to designate membership in an association or other organization. The district court denied forfeiture of those marks, holding that under the

circumstances of this case forfeiture would violate the First and Eighth Amendments.

Mongol Nation appealed its conviction and sentence, and the Government cross-appealed the order denying forfeiture of the marks. The parties' cross-appeals present two issues. First, did the district court lack jurisdiction because Mongol Nation does not qualify as a "person" as defined by RICO; and second, did the district court err in denying forfeiture of the Mongol Nation marks?

We affirm. There was no defect in the district court's jurisdiction stemming from RICO's definition of "person," and we agree with the district court that denial of forfeiture was appropriate under these circumstances.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Mongol Nation is "an unincorporated association comprised of 'official' or 'full-patch' members of the Mongols Gang," a violent, drug trafficking organization. *United States v. Mongol Nation*, 693 F. App'x 637, 638 (9th Cir. 2017).[1]

The current proceedings against Mongol Nation are the latest step in a series of related prosecutions, including the prior prosecutions and guilty pleas of dozens of individual members of the Mongols Gang.[2] Because those prior

---

[1] The phrase "full patch" refers to the Mongols Gang's practice of issuing incentives, such as tattoos and patches, to reward its members for, among other things, their commission of violent acts.

[2] Of the 79 gang members originally indicted, 77 pleaded guilty, one died before the disposition of any charges, and one was found not competent to stand trial.

prosecutions also involved attempts by the Government to effect forfeiture of the collective membership marks at issue here, we briefly recount the history of those earlier proceedings.

### A. Prior Related Proceedings: *Cavazos* and *Rivera*

In its earlier prosecution of individual Mongols members—including that of the former leader of the Mongols, lead defendant Ruben Cavazos, Sr.—the Government sought forfeiture of two registered collective membership marks owned by Mongol Nation.[3] *Cavazos*, 2011 WL 13143670, at \*1; *id.*, ECF No. 1 (Indictment);

---

[3] The first mark at issue in that case was the word, "MONGOLS," and the second mark was an image that depicts an individual seated on a motorcycle and contains the initials "M.C." *See Rivera v. Carter*, No. 2:09-cv-2435, 2009 WL 8753486, at \*1 & n.1 (C.D. Cal. July 31, 2009); *see also* note 5, *infra*.

Sometime after October 22, 2008, Mongol Nation was incorporated in California under the full name Mongols Nation Motorcycle Club, Inc. *United States v. Cavazos*, No. CR08-01201, 2011 WL 13143670, at \*2 (C.D. Cal. June 28, 2011). Before that, Mongol Nation had been using the "MONGOLS" and "M.C." marks since approximately 1969. *Rivera*, 2009 WL 8753486, at \*6; *see also* Order, *Cavazos*, 2011 WL 13143670, ECF No. 4481 at 1. Either Mongol Nation or Mongols Nation Motorcycle Club, Inc. have continued to use the marks for membership identification since that time. *Rivera*, 2009 WL 8753486, at \*6; *see also* Order, *Cavazos*, 2011 WL 13143670, ECF No. 4481 at 1.

As the district court explained in *Rivera*, because they have used the collective membership marks continuously since 1969 (and have also registered the marks), Mongols Nation Motorcycle Club, Inc. and Mongol Nation "have acquired and maintained exclusive ownership in the collective membership mark[s] at issue." *Rivera*, 2009 WL 8753486, at \*6; *see also* Order, *Cavazos*, 2011 WL 13143670, ECF No. 4481 at 1; *see also United States v. Mongol Nation*, 370 F. Supp. 3d 1090, 1119 (C.D. Cal. 2019).

*Rivera*, 2009 WL 8753486, at \*1 & n.1. Pursuant to an application by the Government, the district court enjoined the *Cavazos* defendants from taking "any action that would affect the availability, marketability or value of the MONGOLS trademark" and ordered defendants "to surrender for seizure all . . . [items] bearing the [mark]." *Rivera*, 2009 WL 8753486, at \*1.

In response to that order, Ramon Rivera—a member of Mongol Nation who was not charged in *Cavazos*—filed a civil action seeking an injunction to prevent the Government from seizing property based solely on the fact that it bore the relevant marks. *Id.*, ECF. No. 1 (Complaint). The district court granted a preliminary injunction. It found that Mongol Nation (the unincorporated association) and Mongols Nation Motorcycle Club, Inc. were the exclusive owners of the marks, rather than Cavazos or any other individual member of the organizations, and that the marks were therefore not forfeitable under RICO in the context of the *Cavazos* prosecutions. *Rivera*, 2009 WL 8753486, at \*7.[4] The district court ultimately granted summary judgment to Rivera. *Id.*, ECF No. 90 (Summary Judgment Order).

Meanwhile, criminal proceedings continued in *Cavazos*. Following Cavazos' guilty plea, the Government continued to seek forfeiture of the marks. *See Cavazos*, 2009 WL 10680370, at \*1–3. On June 15, 2010, the district court entered a preliminary order of forfeiture (POF) concerning the marks, finding that they "b[ore] some nexus to the

---

[4] In dicta, the district court also made some "observations regarding the application of the First Amendment to th[e] case," including its tentative conclusion that plaintiff Rivera had a right protected by the First Amendment's freedom of association to display the Mongols' collective membership marks. *Id.* at \*10–11.

criminal enterprise in which . . . defendants were involved." *Id.* at *1, 3. In response, Mongols Nation Motorcycle Club, Inc. filed a petition to vacate or amend the order under 18 U.S.C. Section 1963(l), asserting a property interest in the marks. *Id.* at *1.

The district court granted Mongols Nation Motorcycle Club, Inc.'s petition and vacated the POF. It concluded that the marks were not forfeitable because: (1) RICO authorizes forfeiture only of property belonging to a defendant, and (2) the "club," rather than any indicted defendant, maintained exclusive ownership of the marks. *See id.* at *3–4.

### B.  The Present Proceedings against Mongol Nation

Following those earlier prosecutions, Mongol Nation, the defendant in this case, was indicted for substantive RICO and RICO conspiracy violations.

Mongol Nation successfully moved the district court to dismiss the indictment "on the ground that there is no meaningful distinction between the association Mongol Nation and the enterprise of the Mongols Gang." *Mongol Nation*, 693 F. App'x at 637 (internal quotation marks omitted). We reversed, holding that "Mongol Nation was alleged to be part of a larger whole, the Mongols Gang, which is comprised of additional individuals who together form the alleged enterprise." *Id.* at 638. We declined to address Mongol Nation's challenges to the Government's efforts to effect forfeiture of the Mongols' membership marks as "premature" and "not ripe for review." *Id.*

On remand, the Government filed a superseding indictment (FSI), and the case proceeded to a jury trial. The jury found Mongol Nation guilty on two counts: substantive

RICO (Count I) and RICO conspiracy (Count II). *See* 18 U.S.C. § 1962(c)–(d). Mongol Nation filed post-trial motions for judgment of acquittal and for a new trial, which were denied.

The FSI also contained forfeiture allegations. The Government sought forfeiture of (among other things): "(1) all rights associated with the collective membership marks described in the FSI and the Government's Bills of Particulars . . . (collectively, the 'Marks')"; and (2) "items of personal property bearing any of the Marks, which . . . were seized in connection with [the investigation]."[5] *See Mongol*

---

[5] Images of the three Marks at issue in this case are reproduced below:



At some point, all three Marks were registered with the U.S. Patent and Trademark Office. At the time the district court was considering whether

*Nation*, No. CR 13-0106-DOC-1 (C.D. Cal.), ECF Nos. 264 (Gov't's Forfeiture Mem.), 269 (Gov't's Third Bill of Particulars).

The district court conducted a jury trial on the forfeiture allegations. The jury found that none of the relevant property was forfeitable under Count I—the substantive RICO count. As for Count II—the RICO conspiracy count—the jury found the following property forfeitable: (1) the Marks, (2) relevant items bearing the Marks, and (3) weapons, ammunition, and body armor. Following the forfeiture trial, the Government filed a motion for a POF concerning that property under RICO, 18 U.S.C. § 1963, including forfeiture of all rights associated with the Marks.

The district court denied the Government's POF motion in part. The district court granted the requested forfeiture of the Mongols' weapons, ammunition, body armor, and specific Mongols property seized during raids by federal agents. But it denied forfeiture of the "rights associated" with the "collective membership marks" on the ground that forfeiture in these circumstances would violate the First and Eighth Amendments. *Mongol Nation*, 370 F. Supp. 3d at 1114–16, 1120.

As to the First Amendment, the district court held that forfeiture of all rights to the Marks would impermissibly prevent or discourage Mongols members from displaying the Marks. *Id.* at 1112–13. The district court reasoned that such display constitutes "expressive conduct . . . communicat[ing] a person's association with the Mongol Nation, and his or her support for their views." *Id.* According

---

to grant forfeiture, two of the marks were registered and one registration had been cancelled.

to the district court, the first "POF—which would vest title [to the Marks] in the United States—[would] function[] as a prior restraint on future speech" and also regulate speech based on its content. *Id.* at 1114. Applying strict scrutiny review, the court concluded that the POF was not sufficiently tailored to the Government's compelling interest in punishing and dismantling criminal organizations. *Id.* at 1114–15.

Turning to the Eighth Amendment, the district court reasoned that the first POF would violate the amendment's prohibition on excessive fines because forfeiture of the Marks would be "harsh and grossly disproportionate" to Mongol Nation's crime of RICO conspiracy. *Id.* at 1119. The district court reasoned that the Marks, which "were acquired in 1969 upon first use and have been maintained through continuous use for decades[,] . . . have immense intangible, subjective value to the Mongol Nation and its members," which outweighs the gravity of the RICO conspiracy offense. *Id.* at 1120. Accordingly, the district court found that the first POF would violate the "gross disproportionality test to determine Constitutional excessiveness" under the Eighth Amendment. *See id.* at 1118.

While the district court rested its denial of the first POF upon these two constitutional grounds, its opinion also included some "observations regarding the feasibility of any transfer of the collective membership marks" under trademark law. *Id.* at 1121. The district court ultimately concluded that transfer of the marks "may not be legally possible" under trademark principles. *Id.* at 1121–25.

Following the district court's decision denying the first POF, the Government filed a second, narrower forfeiture application concerning the Marks. This second POF was

designed specifically to "mitigate [the aforementioned] constitutional concerns." Instead of providing for transfer of the Marks to the Government, the second proposed POF provided:

> Defendant shall and hereby does forfeit any and all right(s) it holds as the owner of the Marks, whether pursuant to federal, state or common law, to limit, restrain, or in any way prohibit, through legal process or otherwise, any other individual or entity from using or displaying the Marks, in commerce or otherwise. Defendant's title to the Marks is hereby extinguished, but such title is not transferred to, and shall not vest in, the United States. *See* 18 U.S.C. § 1963(f). This order does not, and shall not, have any [e]ffect on the right(s) of Defendant and its individual members to continue their lawful use and display of the Marks.

The district court summarily denied this second POF as well. At sentencing, the district court referenced its order denying the first POF, reaffirming its conclusion that the "collective membership marks are not forfeitable" under the First and Eighth Amendment. The district court granted forfeiture of the Mongols' "tangible" property, like the vests, patches, and clothing bearing the Marks, as well as the Mongols' weapons and armor. But the district court denied forfeiture of the rights concerning the Marks. The court also sentenced Mongol Nation to five years' probation and imposed a $500,000 fine and an $800 special assessment.

Mongol Nation timely appealed its conviction and sentence. The Government timely cross-appealed the denial of the second POF.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. Section 1291. We review de novo questions of law, including constitutional issues, *see United States v. Kuchinski*, 469 F.3d 853, 857 (9th Cir. 2006), and questions of statutory interpretation, *see United States v. Paulk*, 569 F.3d 1094, 1095 (9th Cir. 2009). Arguments seeking to overturn a criminal jury's verdict that are not renewed in a post-trial motion for judgment of acquittal are reviewed for plain error. *United States v. Eriksen*, 639 F.3d 1138, 1148 (9th Cir. 2011). "Plain error is (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Blinkinsop*, 606 F.3d 1110, 1114 n.2 (9th Cir. 2010).

A district court's decision not to impose a forfeiture judgment is reviewed de novo. *United States v. Phillips*, 704 F.3d 754, 762 (9th Cir. 2012).

## III. DISCUSSION

We first consider Mongol Nation's appeal, in which it argues that its conviction and sentence must be vacated because it is not an indictable "person" under RICO. It is undisputed that Mongol Nation never raised this argument in the district court. We conclude that this unpreserved argument is non-jurisdictional, and that Mongol Nation has not established that the district court plainly erred by not dismissing the indictment.

We next turn to the Government's cross-appeal of the order denying the second POF. We conclude that forfeiture

was correctly denied, although for different reasons than the district court. Because we conclude that RICO's plain text renders the Government's second POF a legal impossibility, we need not decide whether forfeiture of the Marks would violate the First and Eighth Amendments.

## A.

Mongol Nation contends that it does not qualify as a "person" under RICO and that the indictment against it should therefore have been dismissed for lack of jurisdiction. It reasons that (1) RICO limits the definition of "person" to entities capable of holding a legal or beneficial interest in property, 18 U.S.C § 1961(3); (2) under California law, unincorporated associations, like Mongol Nation, can own property, but only if the association exists for a "lawful purpose," Cal. Corp. Code §§ 18035(a), 18105; and (3) the indictment expressly alleged that Mongol Nation exists exclusively for an unlawful purpose. Mongol Nation argues that it thus cannot qualify as either a property-owning unincorporated association under California law or, by extension, a RICO "person."

The Government argues that Mongol Nation has waived this argument by failing to raise it in a pre-trial challenge to the indictment under Federal Rule of Criminal Procedure 12(b)(3), or, in the alternative, that Mongol Nation's claim, which it did not raise in a post-trial motion for judgment of acquittal, does not amount to plain error. *See Eriksen*, 639 F.3d at 1148 (explaining that arguments not renewed in a motion for judgment of acquittal are reviewed for plain error). While it is undisputed that Mongol Nation did not raise this argument below, Mongol Nation responds that the issue is jurisdictional, and therefore not waivable.

Mongol Nation's attempt to characterize its challenge to the indictment as "jurisdictional" is meritless. As a threshold matter, "[i]n every federal criminal prosecution, subject-matter jurisdiction is conferred by 18 U.S.C. § 3231." *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003). Because "a district court has jurisdiction of all crimes cognizable under the authority of the United States[,] . . . the objection that the indictment does not charge a crime against the United States"—for instance, by failing to charge a statutory "person"—"goes only to the merits of the case." *United States v. Cotton*, 535 U.S. 625, 630–31 (2002) (alterations omitted) (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)).

We do not resolve the government's contention that Mongol Nation has waived its argument concerning RICO personhood and that review of this issue is governed by Federal Rule of Criminal Procedure 12(c)(3). Even assuming Mongol Nation's argument is not waived and is thus reviewed for plain error, the argument fails.

Mongol Nation proceeds from a faulty premise. It contends that it cannot qualify as a RICO person because the indictment alleges that the association was organized for unlawful purposes only. Regardless of the merits of this argument—a matter about which we express no view—it mischaracterizes the allegations in the indictment concerning the association's purpose. The indictment alleges that "[t]he purposes of the Mongols Gang . . . included, but were not limited to," several unlawful purposes. Because the indictment expressly contemplated that the association may exist for other purposes—perhaps including lawful ones—it is not facially inconsistent with Mongol Nation's interpretation of the definition of "person" in the RICO statute, even if we assume that interpretation is correct. As

this fundamental premise of Mongol Nation's challenge to the indictment fails, it cannot establish that the district court plainly erred by allowing it to be prosecuted under RICO.

**B.**

We next consider the Government's cross-appeal from the district court's denial of the second POF.

After a guilty verdict in a criminal case, a district court "must determine what property is subject to forfeiture under the applicable statute" for "any count in an indictment or information regarding which criminal forfeiture is sought." Fed. R. Crim. P. 32.2(b)(1)(A). Here, RICO's penalty provision mandates forfeiture of (among other things) (1) any interest the defendant has acquired or maintained in violation of RICO; (2) any property or contractual right of any kind affording a source of influence over a RICO enterprise; and (3) any property constituting, or derived from, any proceeds obtained from racketeering activity in violation of RICO. 18 U.S.C. § 1963(a). Both "tangible and intangible personal property" are subject to forfeiture under this provision. *Id.* § 1963(b)(2).

Where, as here, the Government seeks forfeiture of specific property, the factfinder must determine whether the Government has "established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A), (b)(5). When the jury finds such a nexus, RICO "provides no discretion:" forfeiture is mandatory. *United States v. Busher*, 817 F.2d 1409, 1415 (9th Cir. 1987); *see also* 18 U.S.C. § 1963(a) (defendants "shall forfeit" covered property). Nevertheless, "the district court must avoid unconstitutional results by fashioning forfeiture orders that stay within constitutional bounds." *Busher*, 817 F.2d at 1415. Where there are dispositive "statutory

grounds" for denial of forfeiture, the court "need not reach [any] constitutional issue." *See United States v. Kenney*, 789 F.2d 783, 784 n.2 (9th Cir. 1986).

Here, the district court held that both the first and second POFs would violate the First and Eighth Amendments and suggested (though did not hold) that forfeiture of the Marks would also be effectively impossible under principles of trademark law. We need not decide whether these conclusions, including the district court's constitutional holdings, were correct. We find that forfeiture here was improper for a different reason—namely, the Government's contemplated method of forfeiture is not permitted by RICO's forfeiture provision. We therefore affirm on this basis without reaching the district court's constitutional rationales.[6] Because we decide on these grounds, we also do not reach the question whether the Marks may be forfeitable without the transfer of any goodwill associated with the Marks, or any other trademark issues.

We begin by examining whether and how ownership of the Marks would purportedly transfer from Mongol Nation to the Government under the second POF. Presumably in an effort to neutralize the district court's constitutional concerns with the first POF, the Government's second POF sought to "forfeit[] only . . . narrowly-defined intellectual property rights . . . that are associated with the Marks."

---

[6] "We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003). And "this court must apply its view of the law as it sees it," even where the parties have failed to address a dispositive question of law. *United States v. Comstock Extension Min. Co.*, 214 F.2d 400, 403 (9th Cir. 1954).

Specifically, the POF sought to extinguish those rights Mongol Nation "holds as the owner of the Marks, whether pursuant to federal, state or common law, to limit, restrain, or in any way prohibit, through legal process or otherwise, any other individual or entity from using or displaying the Marks, in commerce or otherwise."

The second POF further provided that while "Defendant's title to the Marks [would be] extinguished," title to the Marks would "not transfer[] to, and shall not vest in, the United States," nor would the order "affect . . . the right(s) of Defendant and its individual members to continue their lawful use and display of the Marks." In short, the Government effectively sought an order seizing and extinguishing the Mongols' right to exclusive use of its Marks without the Government itself ever seizing title to the Marks.

In trying to mitigate the constitutional problems the district court raised in addressing the first POF, the Government has created a new problem: the method of forfeiture contemplated by the second POF is precluded by the plain language of RICO's forfeiture provision. The RICO statute provides that "all right, title, and interest in property [forfeitable under RICO] *vests in the United States* upon the commission of the act giving rise to forfeiture under this section." 18 U.S.C. § 1963(c) (emphasis added). But as explained above, the entire premise of the second POF is that it "expressly would not vest title to the forfeited marks in the government." Gov't's Reply at 24. The second POF is thus facially inconsistent with RICO's forfeiture provision: RICO provides no mechanism for forfeiture to occur without a transfer of title to the Government. Denial of the POF was therefore warranted on these grounds.

When confronted with this conflict between the text of RICO's forfeiture provision and its second proposed POF at oral argument, the Government responded that we should remand to the district court with directions to enter the first POF if vestiture of title to the Marks is statutorily required under RICO. The Government, however, never appealed the district court's denial of its first POF, choosing instead to propose the second POF at issue here. We therefore decline to reach any issues regarding the propriety of entry of the first POF.

*      **      *

Mongol Nation's unpreserved argument regarding RICO's definition of "person" and the Government's challenge to the denial of its second POF each fail. The district court's judgment is in all respects

**AFFIRMED.**